NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAVIER ROMAN, | : |
| Plaintiff, | : Civil Action No. 10-4337 (JAP) |
| v. | : |
| | : **OPINION** |
| WASTE MANAGEMENT OF NEW JERSEY, WASTE MANAGEMENT, INC., LAWRENCE FASCHAN, SCOTT SMITH, JOHN HYNES, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 945, ABC, INC. 1-10, and JOHN DOES 1-10, | : |
| Defendants. | : |

PISANO, District Judge.

Before the Court is a motion to dismiss certain claims filed by Defendants Waste Management of New Jersey, Inc. ("WMNJ"), Lawrence Faschan, and John Hynes (collectively, the "Waste Management Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Javier Roman opposes the motion. For the reasons that follow, the Court will grant the motion to dismiss.

**I.   BACKGROUND**

On August 23, 2010, Plaintiff commenced this action against the Waste Management Defendants,[1] Scott Smith, and the International Brotherhood of Teamsters, Local 945 ("Local 945"). Plaintiff previously had filed a complaint with the United States Equal Employment

---

[1] The Court notes that Plaintiff also brought the Complaint against Waste Management, Inc., of which, he alleged, WMNJ was a wholly owned subsidiary. In its Answer, WMNJ denied the allegation.

Opportunity Commission ("EEOC") and subsequently, on May 27, 2010, he received his "Right to Sue" letter. In the instant Complaint, Plaintiff alleges that the defendants engaged in discriminatory conduct toward him, which included uttering racial epithets to Plaintiff, threatening Plaintiff if he made worker compensation claims, denying Plaintiff's applications for management positions, and ultimately terminating Plaintiff's employment.

Plaintiff claims that, as a Latino and member of a protected class, he received disparate treatment from the defendants (Count One) and was subject to disparate impact (Count Two). He also claims that the defendants created a hostile work environment (Count Three) and retaliated against him for opposing unlawful acts and practices (Count Four). Plaintiff states the first four counts of his Complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD"). Finally, Plaintiff complains that WMNJ and Local 945 breached their duty of fair representation by failing to adhere to its collective bargaining agreement (Count Five) and breached the implied covenant of good faith and fair dealing with regard to the collective bargaining agreement (Count Six).

The Waste Management Defendants filed its motion to dismiss on October 7, 2010. They request that the Court dismiss Plaintiff's LAD claims against WMNJ, his Title VII and LAD claims against Lawrence Faschan and John Hynes (the individual defendants), and his Title VII disparate impact and retaliation claims against WMNJ.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and footnote omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted).

A district court deciding a motion to dismiss generally does not consider material beyond the pleadings.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042, 114 S. Ct. 687 (1994).  Typically, when a court does rely on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provide all parties with a reasonable opportunity to present all material pertinent to the motion.  *See* Fed. R. Civ. P.

12(d). This rule allows the plaintiff an opportunity to respond to any extraneous documents that the court considers. *Pension Benefit*, 998 F.2d at 1196. An exception to the general rule exists, however, so that a court may consider extraneous documents to which a plaintiff refers in the complaint or on which the claims in the complaint were based without converting the motion to dismiss into one for summary judgment. *Burlington Coat Factory*, 114 F.3d at 1426; *Pension Benefit*, 998 F.2d at 1196. The rationale behind the exception is that, when a complaint refers to or relies on a document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit*, 998 F.2d 1192 at 1196-97.

In this case, the Waste Management Defendants ask the Court to consider documents attached to the declaration of defense counsel ("Declaration"), Docket Entry no. 10-1, to the extent that Plaintiff's Complaint referred to or was based on those documents. They include the Charge of Discrimination filed with the EEOC and the New Jersey Division on Civil Rights ("DCR") and the "Dismissal and Notice of Rights" letter issued by the EEOC on May 26, 2010. Plaintiff specifically refers to both documents in his Complaint. *See* Complaint, ¶ 59. Plaintiff does not appear to oppose the use of these documents and, indeed, refers to them in his opposition to the instant motion. Accordingly, the Court will consider the documents and examine the issues under the standard of a motion to dismiss.

## III.   DISCUSSION

In their motion to dismiss, the Waste Management Defendants request that the Court dismiss Plaintiff's LAD claims against WMNJ, his Title VII and LAD claims against Lawrence Faschan and John Hynes (the individual defendants), and his Title VII disparate impact and

retaliation claims against WMNJ. Because the Waste Management Defendants propose to dismiss each under a different legal theory, the Court will address them separately.

> A. **LAD Claims**

The LAD provides means for redress for victims of discrimination. N.J.S.A. 10:5-3. The law provides victims an option to pursue recompense through an administrative process with the DCR as an alternative to commencing an action in New Jersey state courts. *Chugh v. W. Inventory Servs., Inc.*, 333 F. Supp. 2d 285, 290 (D.N.J. 2004). The LAD, however, contains an "election of remedies" provision that bars an individual from bringing a judicial action while the DCR is pursuing its investigation or after the DCR has rendered its determination. *Id.* Specifically, the provision states:

> [T]he procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.

N.J.S.A. 10:5-27. This provision "basically seeks to prevent parties from having 'a second bite at the apple' by pursuing the alternative route to relief. It seeks to prevent duplication of efforts and forum shopping." *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 271, 729 A.2d 1006, 1010 (1999) (citing *Ferrara v. Tappan Co.*, 722 F. Supp. 1204, 1205 (D.N.J. 1989)).

Pursuant to a worksharing agreement between the EEOC and the DCR, a plaintiff may file a Charge of Discrimination with the EEOC and elect to "dual file" it with the DCR so that one agency may investigate discrimination claims under both federal and state law. *See* Declaration ¶3, Exh. B. According to a letter from the DCR to the Waste Management Defendants, "[o]nce the Equal Opportunity Commission has made a Determination concerning [a] charge and closes its file, the Division on Civil Rights ordinarily adopts the EEOC's

5

determination." *Id.* The DCR will review, however, a no reasonable cause determination by the EEOC upon application and for good cause shown. *Id.*

In this case, Plaintiff chose to seek relief through the DCR administrative process. He elected to have his EEOC Charge of Discrimination "dual filed" with the DCR, and the DCR deferred investigation and processing to the EEOC. *Id.* The EEOC returned a determination of no reasonable cause on May 26, 2010. Declaration, Exh. C. Plaintiff filed the instant suit on August 23, 2010. On October 7, 2010, the Waste Management Defendants filed their motion to dismiss, citing the LAD's election of remedies provision as the reason the LAD claims should be dismissed. After this, on October 18, 2010, Plaintiff advised the DCR by letter that, having no record of a determination from the DCR, he was withdrawing its DCR complaint.

Because Plaintiff elected to proceed by the administrative process, it would typically seem straightforward that N.J.S.A. 10:5-27 would control and his LAD claims would be dismissed. *See Metzler v. Am. Transp. Grp., L.L.C.*, 2008 WL 413311 (D.N.J. 2008) (dismissing LAD claims when DCR adopted no reasonable cause determination of EEOC pursuant to worksharing agreement). Plaintiff, however, points to *Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645, 684 A.2d 1385 (1996), as support for maintaining his LAD claims here. In *Hernandez*, the plaintiff, Hernandez, filed separate discrimination claims, regarding the same conduct, on separate dates with the EEOC and the DCR. *Id.* at 650. Hernandez then withdrew his DCR complaint before the DCR had taken any action. *Id.* at 651. Almost a year after the withdrawal, the EEOC returned a no reasonable cause determination and Hernandez thereafter filed suit. *Id.* The Supreme Court of New Jersey allowed his LAD claims to survive, reasoning that the EEOC determination was not a final DCR determination as contemplated by N.J.S.A. 10:5-27. *Id.* at 656.

There are important distinctions in this case, however, that render *Hernandez* inapposite. In *Hernandez*, the EEOC complaint and DCR complaint began, proceeded, and ended as separate claims, instead of, as here, proceeding at the same pace pursuant to the worksharing agreement. This is important because in *Hernandez*, it was obvious that the New Jersey Supreme Court considered only whether the EEOC determination, on its own, precluded the inclusion of the LAD claims. In this case, it is more complex. Under the worksharing agreement, the EEOC is given authority to investigate LAD violations, and the DCR ordinarily adopts the EEOC determination unless a complainant applies to the DCR for review. Therefore, because it appears that Plaintiff did not apply to the DCR for review, the Court could reasonably assume that any DCR determination would adopt that of the EEOC and thus preclude the LAD claims from this suit.

The Court need not make that assumption, however. In *Hernandez*, the plaintiff withdrew his DCR complaint well before the EEOC determination and well before filing his suit. Here, Plaintiff withdrew his DCR complaint only *after* the EEOC completed its investigation of the Title VII and LAD claims and rendered its determination, such that it is obvious that his withdrawal served only to allow his LAD claims to proceed in this case. Indeed, Plaintiff only withdrew his DCR complaint after the Waste Management Defendants moved to dismiss them based on the election of remedies provision, providing further support that he withdrew his complaint to receive a "second bite at the apple." More to the point, the DCR process "shall, while pending, be exclusive" pursuant to N.J.S.A. 10:5-27. Because Plaintiff's complaint before the DCR was still pending when he filed his Complaint with the Court, his LAD claims were barred by statute and his Complaint thus fails to state a claim with regard to them.

7

### B. Claims against the Individual Defendants

Title VII states that "[i]t shall be an unlawful employment practice for an employer" to hire, fire, or otherwise discriminate against an individual on the basis of his or her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). Interpreting whether individuals may be held liable as an "employer," the Third Circuit has clearly held that "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996). Accordingly, the individual defendants in this case may not be held liable under Title VII and the claims are dismissed.

Similarly, the LAD claims against the individual defendants must be dismissed. The Supreme Court of New Jersey has held that "the plain meaning of the definition of employer in the LAD does not include a supervisor. Instead, individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'" *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594, 947 A.2d 626, 645 (2008) (internal citations omitted).[2] It is only possible to find an individual liable for aiding and abetting under the LAD, however, when the employer may be held liable under the LAD. *Feraro-Bengle v. Randstad N. America, L.P.*, 2006 WL 2524170, *12 (D.N.J. 2006); *Jackson v. Del. River & Bay Auth.*, 2001 WL 1689880, *22 (D.N.J. 2001) ("If the NJLAD does not apply to the employer . . . then no individual aiding and abetting liability may be found, because an employer's liability must be shown before any supervisory liability for violations can exist."); *see also Monaco v. Am. Gen. Assur. Co.*, 359

---

[2] N.J.S.A. 10:5-12 states that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

F.3d 296, 307 n.15 (3d Cir. 2004) ("[I]nasmuch as we hold that the district court correctly granted summary judgment to the corporate defendants, any claim he brought against the individual defendants for aiding and abetting fails as well."). In the present case, the Court has dismissed Plaintiff's LAD claims against the employer, WMNJ, and therefore it must dismiss the LAD claims against the individual defendants as well.

### C. Title VII Claims for Disparate Impact and Retaliation

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (citing *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 1662 (1969)). With regard to employment discrimination claims, 42 U.S.C. § 2000e-5 provides that a plaintiff must file a timely Charge of Discrimination with the EEOC before filing a lawsuit. A plaintiff must then wait for the EEOC to complete its investigation of the charge and issue a "Right to Sue" letter before the complainant can initiate a private action. *See Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir.2001) (describing administrative process for discrimination claims).

After a charge is filed, "the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir.1978)). The Third Circuit further explained that "[a]lthough this standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form, it does prevent a plaintiff from 'greatly expanding an investigation simply by alleging new and different facts when she is contacted by the Commission following her charge.'" *Id.* (quoting *Hicks*, 572

F.2d at 967). Finally, "[b]ecause the EEOC is required to serve notice on the employer against whom the charges are made, this standard also allows an employer to be put on notice of the claims likely to be filed against it." *Id.*

Interpreting Plaintiff's charge liberally, his disparate impact and retaliation claims were still not within the scope of the charge.[3] To state a claim for disparate impact, a plaintiff "must identify the specific employment practice that is challenged [and] show that the employment practice causes a disparate impact on the basis of race, color, religion, sex, or national origin." *Stagi v. Nat'l R.R. Passenger Corp.*, 391 Fed. Appx. 133, 136 (3d Cir. 2010) (citations omitted). Though Plaintiff has pled these elements in his Complaint, nothing in his EEOC charge suggests that a reasonable investigation of the charge would cover a specific employment practice that had a disparate impact. In fact, the only specific employment practices to which Plaintiff refers in his charge are the "employer policies" that others have violated while retaining their jobs, when Plaintiff's employment was terminated. Such a reference could not reasonably be expected to put the employer on notice that a disparate impact claim regarding any specific employment practices was likely to be filed against it.

---

[3] Plaintiff's charge included the following language:

> I was first hired on or about April 11, 2005. My most recent position was that of a Driver.
>
> I have been subjected [to] disparate treatment and harassment. I was suspended without cause sometime in December 2008. Shortly thereafter in January 2009 I was terminated. Meanwhile, other employees who have violated [the] employer policies have remained employed without any discipline or discharge.
>
> Given the above I believe I have been discriminated against based on my national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

*See* Declaration, Exh. A.

10

To state a claim for retaliation, "a plaintiff must prove that: (1) she engaged in protected conduct; (2) her employer took an adverse employment action against her; and (3) a causal link exists between her protected conduct and the adverse employment action." *Young v. Temple Univ. Hosp.*, 359 Fed. Appx. 304, 310 (3d Cir. 2009). Plaintiff's charge provides no hints that he engaged in any protected conduct, nor that his termination or suspension was the result of any protected conduct. Accordingly, it is not reasonable to expect an investigation into his charge to cover such claims, nor could his employer reasonably expect to be sued for such claims.

Plaintiff did not include in his EEOC charge anything to suggest his claims for disparate impact or retaliation. Therefore, he did not exhaust his administrative remedies with respect to these claims and they must be dismissed.

## IV.   CONCLUSION

The Court concludes that Plaintiff's LAD claims against WMNJ are precluded by statute, that his Title VII claims and LAD claims against Lawrence Faschan and John Hynes fail as a matter of law, and that his disparate impact and retaliation claims were not exhausted in the administrative process. Accordingly, Plaintiff has failed to state a claim with respect to those claims and they will be dismissed. An appropriate order shall issue.

/s/ JOEL A. PISANO
United States District Judge

Dated: May 12, 2011